J-A22041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: RELINQUISHMENT OF J.D.,  :  IN THE SUPERIOR COURT OF
A MINOR                        :      PENNSYLVANIA
                               :
                               :
APPEAL OF: F.D., FATHER        :     No. 501 MDA 2016

Appeal from the Order Entered March 18, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): A-87-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 23, 2016**

Appellant, F.D. ("Father"), appeals from the order entered in the Lackawanna County Court of Common Pleas, which involuntarily terminated his parental rights to his minor child, J.D. ("Child").  Upon a thorough review of the record, we affirm.

The relevant facts and procedural history of this case are as follows. Child was born in July 2014 to Father and T.C. ("Mother").  After hospital personnel observed erratic behavior from both parents, the Lackawanna County Office of Family and Youth Services ("OYFS") filed a petition for emergency protective custody of Child.  The court granted the petition on July 22, 2014, and OYFS placed Child in kinship foster care immediately after her discharge from the hospital.  OYFS subsequently filed a dependency petition, which the court granted on July 31, 2014.

The court held numerous permanency review hearings between July

2014 and December 2015. At the hearings, the court consistently determined that Father demonstrated moderate compliance with his permanency plan. The court noted that Father attended weekly visits with Child at OYFS' Visitation Center and participated in some of the treatment required by his permanency plan. The court also consistently found that Father made minimal to no progress toward alleviating the circumstance that led to Child's placement. The court indicated that Father did not progress past line-of-sight supervised visits with Child and had trouble grasping how to interact with Child. Due to both parents' failure to remedy the circumstances that led to Child's placement, OYFS filed a petition for involuntary termination of Father's and Mother's rights on December 19, 2015.

The court held termination hearings on January 19, 2016, and March 7, 2016. At the hearings, OYFS presented the testimony of various OYFS and Scranton Counseling Center caseworkers, who worked with Father and Child to help achieve reunification. These witnesses all testified to Father's moderate compliance with his permanency plan and minimal progress towards alleviating the circumstances that led to Child's placement. Father also testified and expressed his love for Child and desire to care for Child at home. Following the conclusion of testimony at the March 7, 2016 hearing, the court terminated Father's and Mother's parental rights. On March 28, 2016, Father timely filed a notice of appeal and concise statement of errors

J-A22041-16

complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Father raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW
> AND/OR MANIFESTLY ABUSED ITS DISCRETION IN
> DETERMINING [OYFS] PRESENTED SUFFICIENT EVIDENCE
> TO SATISFY THE GROUNDS FOR TERMINATION OF
> FATHER'S PARENTAL RIGHTS UNDER SECTION 2511(A) OF
> THE ADOPTION ACT?
>
> EVEN IF THIS COURT DETERMINES [OYFS] PRESENTED
> SUFFICIENT EVIDENCE TO SATISFY THE GROUNDS FOR
> TERMINATION OF FATHER'S PARENTAL RIGHTS UNDER
> SECTION 2511(A) OF THE ADOPTION ACT, WHETHER THE
> TRIAL COURT NEVERTHELESS ERRED AS A MATTER OF
> LAW AND/OR MANIFESTLY ABUSED ITS DISCRETION IN
> DETERMINING TERMINATION OF FATHER'S PARENTAL
> RIGHTS IS IN THE BEST INTERESTS OF…CHILD OR THAT
> THE CONDITIONS THAT LED TO REMOVAL HAVE NOT
> BEEN REMEDIED[?]

(Father's Brief at 5).

The standard and scope of review applicable in a termination of

parental rights case is as follows:

> When reviewing an appeal from a decree terminating
> parental rights, we are limited to determining whether the
> decision of the trial court is supported by competent
> evidence. Absent an abuse of discretion, an error of law,
> or insufficient evidentiary support for the trial court's
> decision, the decree must stand. Where a trial court has
> granted a petition to involuntarily terminate parental
> rights, this Court must accord the hearing judge's decision
> the same deference that it would give to a jury verdict.
> We must employ a broad, comprehensive review of the
> record in order to determine whether the trial court's
> decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of
> fact, is the sole determiner of the credibility of witnesses
> and all conflicts in testimony are to be resolved by [the]

- 3 -

finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1003-04 (Pa.Super. 2008) (*en banc*).

Section 2511 provides grounds for involuntary termination of parental rights in relevant part as follows:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*     \*     \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re*

- 5 -

*A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* at 520. Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not

required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and…have his… rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights

are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Margaret Bisignani Moyle, we conclude Father's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed April 26, 2016, at 8-10) (finding: **(issues 1-2)** OYFS placed Child in kinship foster care immediately after her birth, and Child has remained in foster care ever since; Father's has had only supervised visits with Child at OYFS' Visitation Center; Father is extremely slow to learn needs of Child and caseworker often has to prompt Father to interact with Child during visits; Father has failed to meet several of his permanency plan goals, which are necessary for Father to achieve reunification with Child; specifically, Father has failed to follow through on his mental health and anger management counseling; Father requires life services through Scranton Counseling Center due to his diagnosed

intellectual disability and bipolar disorder; Scranton Counseling Center helps Father with most basic tasks of daily life including money management and shopping; at termination hearing, Father expressed his belief that he does not need his prescribed bipolar disorder medication and informed court that he had stopped taking it; due to Father's intellectual disability and bipolar disorder, Father is unable to care for himself and Child without assistance regarding basic life tasks; these facts support termination of Father's parental rights pursuant to Section 2511(a)(2); with respect to Section 2511(b), kinship foster care has provided Child permanency, and Child's foster home is only home Child has ever known; kinship foster home meets all of Child's emotional, physical, and developmental needs; Child has noticeable bond with foster parents; since Child's placement, Father's only contact with Child has been through line-of-sight supervised visits; there is no evidence of existing bond between Father and Child; thus, termination of Father's parental rights is in Child's best interest).  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016



IN THE INTEREST OF:           : IN THE COURT OF COMMON
PLEAS                           : OF LACKAWANNA COUNTY
                                     :

RE. J. D.                              : JUVENILE DIVISION
         Minor                      :
                                       : 120-DP-2014
                                       : 87-A-2015

## MEMORANDUM

Bisignani Moyle, J.

## INTRODUCTION AND PROCEDURAL BACKGROUND

The instant matter was before this Court on January 19, 2016 and March 7, 2016 for a Termination of Parental Rights hearing. The Office of Youth and Family Services filed a termination petition on December 9, 2015. A decision was rendered from the bench by this Court at the conclusion of the hearing on March 7, 2016, terminating the rights of both parents to the minor child. T.C. ("Mother") did not file an appeal in this matter. F. D. ("Father") filed a Notice of Appeal and Statement of Matters Complained of on Appeal on March 28, 2016. This Court will address each issue raised on appeal.

## FACTUAL BACKGROUND

Father and Mother have one biological child, J.D., whose date of birth is July 2014. The child was first placed by the agency directly from the hospital; due to a report received by the agency from hospital staff member indicating they felt Mother and Father were unable to care for the child. (N.T. 1/19/16 at pg. 20). Mother and Father had wrapped the child in a curtain they took off a hospital window. *Id*. Hospital personnel also reported Mother and

1

Father soiled themselves in the hospital room. *Id*. There was also a report that Mother and Father were smoking inside of the hospital. *Id*. at 55. J.D. was placed in kinship care of **C.M. and D.M.** , cousins of Mother, upon discharge from the hospital. *Id*. at 12.

At the time of the TPR hearing caseworker Valarie Perry was called to testify. (N.T. 1/19/16 at pg. 9). Ms. Perry said she was the caseworker assigned to the child from **January 2015** until October 6, 2015. *Id*. at 10. At the time the child was placed, the agency set up a permanency plan for Father which included several goals. Under the plan Father was required to attend parenting classes, obtain a mental health evaluation and comply with any and all treatment recommendations, attend anger management classes, and obtain a drug and alcohol evaluation. *Id*. at 21.

Caseworker Perry testified that Father did attend some parenting classes, but he never completed the program. *Id*. at 22. Father also went to Scranton Counseling Center at times sporadically. *Id*. He also completed a drug and alcohol assessment. *Id*. at 23. Caseworker Perry set up several appointments for Father with Carol Hempt for dual diagnostic counseling for mental health and anger management. *Id*. at 24. Father did not follow through with this treatment. *Id*. He missed several appointments. *Id*. Father would schedule appointments and then not show up. *Id*.

Father had weekly visits with the child at the Office of Youth and Family Services visitation center. *Id*. at 23. Father's visits never progressed beyond supervised visits. *Id*. Therefore, all contact Father has ever had with the child

2

has been in a supervised capacity. *Id*. In January of 2015, Mother's visits with J.D. were suspended due to safety concerns, but Father's visits continued. *Id*. at 44. Ms. Perry testified that during the visits Father would need to be redirected. *Id*. at 51. The supervisor would get down on the floor and show Father how to interact with the child. *Id*. After a while, Father would begin to initiate interaction with J.D. but by that time she had developed further and her needs had changed. *Id*. Father did not adapt fast enough and was always behind in appreciating what requirements existed at each stage in a child's life. *Id*. Ms. Perry rated Father's compliance and progress as "none to minimal." *Id*. at 50.

Next, the agency called Lisa Kanavy to testify. *Id*. at 58. Ms. Kanavy was the visit supervisor for seven months. *Id*. at 60. She testified that Father generally attended all of his scheduled visits with the child. *Id*. Ms. Kanavy stated Father needed to be redirected during the visits. *Id*. She said Father would sit on the couch and look as if he did not know what to do. *Id*. at 87. Father had some progress over the many months, but progress was slow and minimal. *Id*. at 92. In Ms. Kanavy's opinion, there is no bond between the child and Father. *Id*. She stated that the child does not recognize Father as a paternal figure. *Id*. at 80. She testified the child displays excitement when she sees and is picked up by her foster father. *Id*. at 65. Ms. Kanavy testified she is basing her opinion on her experience with other children who are similarly situated but demonstrate different behavior than J.D. *Id*. at 81.

Ms. Kanavy also explained how Father showed little or no ability to plan ahead for his visits with J.D. *Id*. at 66. Father was supposed to bring lunch to the

3

visit for himself and the child, so that they would be able to have a meal together. *Id*. Father would consistently forget to bring a snack or drink for J.D. *Id*. Also, on one visit Father wanted to give J.D. an energy drink. *Id*. Ms. Kanavy stated Father was accompanied on most visits. *Id*. at 68. About twice a month Father would bring his EIHAB volunteer to the visit. *Id*. He would also often bring his mother, the paternal grandmother, to the visits with J.D. *Id* at 84.

The TPR hearing continued on March 7, 2016, with of Dr. Muhammed Rahman called to testify. (N.T. 3/7/16 at pg. 7). Dr. Rahman testified that he is a licensed psychiatrist and the medical director of the Scranton Counseling Center. *Id*. at 8. He testified that he has diagnosed Father with a two-tiered diagnosis: Bipolar Disorder and a mild Intellectual Disability. *Id*. at 21. Dr. Rahman testified that Father is bi-polar based on his violent mood swings. *Id*. at 33. For his bi-polar disorder Father has been prescribed Depakote. *Id*. at 21. Father was an outpatient of the Scranton Counseling Center for eight (8) month ending in December of 2015. *Id*. While at an outpatient status, Father was receiving no services. *Id*. Father only went to the Scranton Counseling Center to pick up his medication. *Id*. During these eight (8) months, Dr. Rahman testified that Father's compliance with picking up and taking his prescribed medication was poor. *Id*. at 22.

In December of 2015, Dr. Rahman transferred Father to a partial program for more intensive management. *Id*. This partial program was supposed to help Father with intellectual disability. *Id*. At the time of the TPR hearing, Father had been in this program for three (3) months. *Id*. at 22. Dr. Rahman also testified

4

that Father is a major support to Mother in her life. *Id*. at 34. He also stated that it was often Father who would make sure that both he and Mother took their medication. *Id*. at 19.

Next, Ellen Sechler, the Scranton Counseling Center Intellectual Disability Department Supervisor, testified to the services SCC provides to Father. *Id*. at 41. She testified that Father receives companion services, support coordination services, a bus pass, and a YMCA membership. *Id*. at 53. Ms. Sechler testified when Father goes to the YMCA he needs help using the facilities from companion services. *Id*. at 54. She also testified that Father needs help shopping for groceries and clothes. *Id*. Ms. Sechler stated, in her opinion, that it would be hard for him to take care of someone else without the services provided by her department. *Id*. at 56. She also testified that Father needs help managing money. *Id*. at 59. His money is managed by the Advocacy Alliance. *Id*.

Megan Saul, OYFS caseworker, testified about the living conditions of both Mother and Father. *Id*. at 67. She stated that Mother and Father had a new apartment as of January, 2016, which was an improvement over their last apartment. *Id*. at 69. She testified the last apartment had two (2) other people living in it with only one bedroom in the apartment. *Id*. at 68. The agency had some concerns with their roommates. *Id*. at 70. They would smoke and make a mess. *Id*. OYFS also had concerns the roommates would agitate Mother, yet Father and Mother continue to let them remain in the apartment. *Id*. OYFS feared that these relationships are not conducive to the type of lifestyle Mother and Father are trying to achieve. *Id*.

5

Father also testified at the TPR hearing. *Id*. at 85. He stated that he loves his daughter and is eager to take her home. *Id*. Father testified the new apartment he and Mother had moved into had a second bedroom which he was setting up as a nursery for his daughter. *Id*. However, when asked on cross examination about his ability to care for his daughter, he stated that he did not know who his daughter's doctor was, or if she even had one, and that he had never been to a doctor's appointment. *Id*. at 89. Father further testified that he had not taken his medication in two (2) weeks and felt that he no longer needed it. *Id*. 92-93.

## DISCUSSION

The statutory grounds for termination of parental rights are set forth in 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

"(a) General Rule – The rights of a parent in regard to a child may be terminated after a petition [is] filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of

6

time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations – The court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed…the court shall not consider any effort by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition."

In determining whether to terminate the rights of a parent, both the statute and Pennsylvania case law require a two-pronged analysis. 23 Pa.C.S. § 2511; In Re Adoption of J.M., 991 A.2d 321, 323 (Pa.Super. 2010). First, the Court must find, by clear and convincing evidence, that the parent's conduct warrants the termination of parental rights. 23 Pa.C.S. § 2511(a); In Re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). Once this burden has been met, the Court must then engage in a "best interests" analysis to determine whether terminating the parent's rights would properly serve the welfare and needs of the child. 23 Pa.C.S. § 2511(b); In Re L.M., 923 A.2d at 511.

In the case at hand, with respect to the first prong, the Agency has alleged Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a),(1),(2),(5), and (8). The Agency has alleged Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a),(1),(2),(5), and (8). Additionally, the Agency has alleged statutory grounds for termination exist for both parents pursuant to 23 Pa.C.S. § 2511(b).

7

## APPLICATION

### F. D.    (FATHER)

This Court finds the Agency has satisfied its burden of proof by establishing, by clear and convincing evidence; Father's parental rights should be terminated pursuant to each subsection of 23 Pa.C.S. § 2511(a) alleged. The facts in this case clearly support the Agency's petition. The minor child was placed in foster care by the Office of Youth and Family Services directly from the hospital following her birth. She has remained in kinship foster care ever since. Therefore, as of this date J.D. has been in care for over twenty (20) months.

Further, Father has only ever had contact with J.D. in a supervised capacity at the OYFS visitation center. Father is extremely slow to learn the needs of J.D. and often had to be prompted to interact with her during the visits. By the time Father would grasp the needs of the child, she had already progressed developmentally. Additionally, Father has failed to meet several of the goals of the permanency plan, which he was supposed to be following in order to achieve reunification with J.D. Father consistently failed to follow through on his mental health and anger counseling. At the time of the TPR hearing Father stated that he was no longer taking his prescribed medication because he felt he did not need it. This testimony establishes a clear and continued incapacity and/or refusal on the part of Father to cause J.D. to be "without proper parental care, control, or subsistence necessary for her emotional and physical well-being." 23 Pa.C.S.A. §2511a(2).

8

Throughout the testimony it was also established Father has been diagnosed with an intellectual disability, as well as bipolar disorder, for which he requires life services provided through Scranton Counseling Center. These services help Father with the most basic tasks of daily life such as managing money and shopping. Through testimony presented it is clear it would be impossible for Father to take care of himself and a minor child due to his diagnosed mental health conditions. Based on this analysis and the above-mentioned facts it is clear the agency has satisfied its burden of proof with respect to 2511(a)(2).[1]

In regard to 23 Pa.C.S. §2511(b), this Court is required to make a "best interest analysis," giving primary consideration to the developmental, physical, and emotional needs and welfare of the child. As already stated above, the testimony established J.D. has resided in her current foster home since she was discharged from the hospital. This placement has afforded the child the permanency and is the only home she has ever known. In the foster home all of her emotional, physical, and developmental needs are being met. J.D. has a noticeable bond with her foster parents. Since her placement, the child has never been in her father's care and has only had contact through supervised visits with him. It is clear the delays and lack of permanency are clearly harmful to the child's emotional well-being. Termination of her father's parental rights will allow her to achieve permanency and end the uncertainty that has consumed her entire life. Furthermore, there is no evidence that a bond exists between Father

---

[1] Haing found that the agency satisfied its burden of proof by clear and convincing evidence for 2511(a)(2), this Court will not address the other subsections alleged.

9

and J.D. Therefore, it is in the best interest of the child for the parental rights of Father be terminated.

**CONCLUSION**

Based on the above mentioned reasons, it shall be the order of this Court that the parental rights of Father, ' F. D. :, be terminated with respect to the minor child J.D.

By the Court,

_____ J

Honorable Margaret Bisignani Moyle

10